**Anthony GASKINS, Petitioner,**

v.

**Gene M. JOHNSON, Dir., Respondent.**

**No. ACTION 1:05CV897TSEB.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Aug. 15, 2006.

---

Anthony Gaskins, State Farm, VA, Pro se.

Noelle L. Shaw–Bell, Office of the Attorney General, Richmond, VA, for Respondent.

## MEMORANDUM OPINION

ELLIS, District Judge.

Petitioner Anthony Gaskins, a Virginia inmate proceeding *pro se*, filed this petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the denial of good conduct credits. Respondent, Gene M. Johnson, the Director of the Virginia Department of Corrections, filed a Motion to Dismiss and Rule 5 Answer on December 28, 2005. Gaskins was given the opportunity to file responsive materials, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), and filed a timely response.[1] Accordingly, this matter is now ripe for disposition and, for the reasons that follow, the Motion to Dismiss must be granted and the petition dismissed.

### I.

In Virginia, inmates like Gaskins earn good-time credits through the Good Conduct Allowance ("GCA") system.[2] Under

---

1. On January 5, 2006, Gaskins filed a Motion for Enlargement of Time to respond to the Motion to Dismiss. On January 24, 2006, Gaskins filed his response to the Motion to Dismiss within the originally designated period, thereby rendering moot his Motion for Enlargement of Time.

2. The discussion of Virginia's Good Conduct Allowance system, and its application to Gaskins, is based on (i) the Virginia Department

the GCA system, an institutional counselor performs an annual evaluation of eligible inmates' adjustment and performance in each of five categories and assigns points accordingly. The number of points an inmate receives determines the inmate's GCA class level.[3] After the institutional counselor submits her or his evaluation, the Institutional Classification Authority ("ICA"), generally the institution's warden or designated supervisor, reviews and approves each eligible inmate's GCA class level.

On August 28, 2003, Gaskins tested positive for tetrahydrocannabinol following a drug screening at Powhatan Correctional Center.[4] Although Gaskins denied using drugs other than prescribed medication, correctional officers charged him with a disciplinary violation and, after a disciplinary hearing, found Gaskins guilty of being "Under the Influence of Drugs." Gaskins' punishment was 30 days of isolation, with credit for time spent in pre-hearing detention. Importantly, Gaskins was able to continue earning good-time credits while serving this isolation punishment. He appealed his conviction on the disciplinary charge, but was unsuccessful. It is unclear on this record whether he fully exhausted his administrative remedies.[5] The following analysis assumes he has.

Thereafter, during his 2004 annual classification review, Gaskins' institutional counselor assigned Gaskins a total score of 49 points out of a possible 100 for the period covering March 28, 2003, to March 28, 2004. More specifically, Gaskins received 10 points out of 10 for personal conduct; 15 points out of 20 for infractions, which included the August 2003 drug use charge; 14 points out of 30 for education, reflecting a reduction for low attendance; 10 points out of 20 for work/vocation, reflecting an adjustment "due to charge;" and, for unspecified reasons, 0 points out of 20 for treatment programs. Based on his total score of 49 points, the ICA lowered his GCA class level from I to III in 2004. This new class level went into effect on March 28, 2004.

of Corrections records submitted by respondent and (ii) the affidavit of Shanda Dawkins, the treatment programs supervisor at Powhatan Correctional Center and the officer who prepared Gaskins' class level evaluation in 2004.

3. The number of good-time credits earned correlates directly with the number of points an inmate is awarded; the more points an inmate is awarded, the higher his GCA classification will be, and correspondingly, the more good-time credits he can earn. Thus, a score of 85 to 100 points qualifies an inmate for level I, the GCA class earning the most good conduct credits. The point scale operates as follows: a score of 65 to 84 points qualifies an inmate for level II; a score of 45 to 64 qualifies an inmate for level III; and a score of 44 or less qualifies an inmate for level IV, which earns no good conduct credits.

4. Tetrahydrocannabinol, the main active ingredient in marijuana is a Schedule I controlled substance under federal law. *See* 21 U.S.C. § 812; *Stedman's Medical Dictionary* 1815 (27th ed.2000).

5. Specifically, he must comply with VDOC Department Operating Procedure ("DOP") 866, which provides multiple levels of administrative remedies through inmate grievances. Per DOP 866–7.13, an inmate must first attempt to resolve any issues informally. After an inmate submits an informal complaint, prison officials must respond within fifteen days of receiving the complaint. *See* DOP 866–7.13. After seeking informal resolution, an inmate may file a regular grievance to the warden or superintendent. The grievance must be filed within thirty days of the underlying incident or occurrence. *See* DOP 866–7.14. Depending on the subject of the grievance, up to two additional levels of review by higher authorities within VDOC may be available following the filing of a regular grievance. *See* DOP 866–7.15.

One year later at his 2005 annual review, Gaskins' institutional counselor assigned Gaskins a total score of 68 points, and accordingly the ICA raised Gaskins' GCA level from III to II. This new classification went into effect on March 28, 2005. The record does not disclose Gaskins' classification level for 2006.

On April 21, 2005, Gaskins filed a petition for writ of habeas corpus in the Supreme Court of Virginia, which dismissed the petition without comment. *Gaskins v. Dir. of the Dep't of Corr.*, R. No. 050924 (Va. June 17, 2005). On August 3, 2005, Gaskins filed the instant petition alleging that officials unlawfully denied him good conduct credits based on an improper disciplinary hearing. Because Gaskins conceived of his claim as a habeas petition, the remedy he sought was restoration of the allegedly lost good time credits, expungement of the disciplinary violation from his record, and "restoration of all previously possessed rights and privileges." In fact, the due process claim he raises merely entitles him to a new hearing providing the process he claims he was denied. Of course, it is unclear whether such hearing would result in the same or a different outcome. Respondent concedes that, pursuant to 28 U.S.C. § 2254(b), Gaskins exhausted this claim before the Supreme Court of Virginia even though the Supreme Court of Virginia simply dismissed the petition as "frivolous." [6] Accordingly, Gaskins' claim will be reviewed here on the merits.

## II.

The threshold question presented is whether Gaskins' claim is properly reviewed here as a habeas claim under 28 U.S.C. § 2254(d) or as a constitutional claim under 42 U.S.C. § 1983. Petitioners not infrequently confuse the two remedies. They are distinct and their purposes differ. As such, federal courts must routinely consider whether a prisoner's claim falls under habeas review or the more general federal civil rights statute, 42 U.S.C. § 1983. *See Wilkinson v. Dotson*, 544 U.S. 74, 78–83, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) (reviewing the preceding thirty-two years of Supreme Court case law explaining which prisoner claims are appropriate for habeas review). The Supreme Court initially concluded that state prisoners cannot use a § 1983 action to challenge "the fact or duration" of their confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 489, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) (*overruled on other grounds by Heck v. Humphrey*, 512 U.S. 477, 482, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)).[7] The Supreme Court has since clarified this principle to hold that, regardless of the relief sought or conduct challenged, the proper remedy lies in habeas corpus only if "success in [an] action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson*, 544 U.S. at 82, 125 S.Ct. 1242. Thus, in challenges to prison procedures, "where success in the action *would not necessarily* spell immediate or speedier release for the prisoner," § 1983, not habeas corpus, is the appropriate remedy. *Id.* at 81, 125 S.Ct. 1242 (emphasis in original). The question, therefore, is whether success on Gaskins' challenge to a prison disciplinary proceeding and GCA level reclassification would "necessarily spell [his] immediate or speedier release." *Id.* The answer is clearly, no.

---

**6.** *See Parker v. Angelone*, 959 F.Supp. 319, 320 (E.D.Va.1997) ("[A] decision by a state court summarily dismissing a petitioner's claim as 'frivolous' is an adjudication on the merits within the meaning of 28 U.S.C. § 2254(d) [and entitled to full review on the merits].").

**7.** *See also Edwards v. Balisok*, 520 U.S. 641, 648, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997); *Heck v. Humphrey*, 512 U.S. 477, 481, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); *Wolff v. McDonnell*, 418 U.S. 539, 554, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

Gaskins challenges his reclassification from GCA level I to level III, which he alleges resulted from an institutional disciplinary hearing. He argues that, but for the unconstitutional disciplinary hearing, he would not have lost the ability to earn more good-time credits, thus making him eligible for an earlier release. Even assuming, *arguendo*, that the disciplinary violation caused Gaskins to lose temporarily the ability to earn more good-time credits, at no point did Gaskins lose any already-earned good-time credits, nor did his reclassification extend the length of his sentence.[8] Thus, even if he did not receive due process at the disciplinary hearing, and the outcome directly impacted Gaskins reclassification, Gaskins did not lose any already-earned good-time credits and the mere possibility that he might have earned more credits qualifying him for an earlier release does not equate to a guarantee that he would have obtained a speedier release. In other words, even if Gaskins were to prevail here, and even assuming further that Gaskins were to prevail in a subsequent hearing on the charge, this would not affect his classification level. Thus, were he to prevail on his due process claim, it would not "necessarily spell immediate or speedier release" for him. *Id.*

Accordingly, Gaskins' pending due process claim does not meet the standard announced in *Wilkinson* for habeas review and should instead be asserted pursuant to a § 1983 prisoner conditions action. Even so, this petition need not be dismissed for lack of subject matter jurisdiction as the claims are facially and plainly meritless and hence subject to dismissal pursuant to 28 U.S.C. § 1915A.[9]

## III.

The principles that govern a § 1983 action are well-settled. The Fourteenth Amendment provides, in relevant part, that "[n]o state shall ... deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. Fundamental to due process is "the protection of the individual against arbitrary action of government." *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). To prevail on a § 1983 claim challenging a state prison's classification system, a claimant must show (i) that he had a protected liberty interest in receiving or obtaining a particular classification; (ii) that his interest was adversely affected by the alleged conduct; and (iii) that he did not receive due process. *Slezak v. Evatt,* 21 F.3d 590, 593–94 (4th Cir.1994). Thus, the initial question is whether the inmate had a protected liberty interest in either maintaining a current classification or obtaining a new classification. *Id.* (citing *Wolff,* 418 U.S. at 555–57,

---

8. Significantly, in the annual review, following the classification he challenges here, Gaskins' GCA level increased from III to II. More importantly, Gaskins retains the opportunity to qualify for reclassification to a higher earning level in the future, which in turn could reduce the length of his sentence (provided he actually earns credits). Conversely, he could qualify for a lower earning level, which would result in no reduction of the length of his sentence.

9. In reviewing a complaint pursuant to § 1915A, a court should dismiss a prisoner complaint that is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1). Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R.Civ.P. 12(b)(6)." *Sumner v. Tucker,* 9 F.Supp.2d 641, 642 (E.D.Va.1998). Thus, the alleged facts are presumed true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

94 S.Ct. 2963). The Fourth Circuit answered this question by noting that "[t]he federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status 'as long as the [challenged] conditions or degree of confinement ... are within the sentence imposed ... and are not otherwise violative of the Constitution.'" *Id.* at 594, 94 S.Ct. 2963. (quoting *Hewitt v. Helms,* 459 U.S. 460, 468, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)); *DeBlasio v. Johnson,* 128 F.Supp.2d 315, 329 (E.D.Va.2000) (finding no liberty interest "in remaining in or being assigned to a particular good conduct allowance level").

The security and custody classification of state prison inmates is a matter committed to the discretion of state prison officials. The classification "implicates federal due process protections only where the [classification] imposes upon the inmate conditions which [sic] dramatically depart from the expected conditions of his indeterminate sentence." *Oliver v. Powell,* 250 F.Supp.2d 593, 605 (E.D.Va.2002) (citing *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)) (stating that custody and security status and good time earning rates, because they are subject to change, do not implicate federal due process).

Gaskins incorrectly argues that his sentence was effectively lengthened. When a loss of already-earned statutory good-time credits is at issue, the Supreme Court has mandated procedural safeguards, including advance written notice of charges, written findings, and a general right to call witnesses. *See Wolff,* 418 U.S. at 563–67, 94 S.Ct. 2963. Yet, Gaskins does not allege,

and nothing in the petition or accompanying documentation suggests, that Gaskins lost any already-earned credits. To the contrary, the record clearly shows that Gaskins' sentence was not lengthened. At best, he was denied the opportunity to earn additional good-time credits at the same rate he would have earned them had he maintained a GCA level I classification. Thus, his drug infraction resulted in reducing the good-time credits he might earn *in the future;* it did not result in his losing any already-earned credits. This distinction is important because prisoners have no liberty interest in obtaining or retaining a specific prison classification level to allow them to obtain an early release. *See Slezak,* 21 F.3d at 594; *DeBlasio,* 128 F.Supp.2d at 329. It follows that his due process claim necessarily fails because he has no liberty interest in retaining his level I GCA classification.

Moreover, to the extent Gaskins alleges he did not receive due process at his institutional disciplinary hearing, he has failed to show that the disciplinary hearing impacted his GCA classification level. Indeed, it is clear that Gaskins would have received the reduction in his GCA level even without the disciplinary hearing. His overall score—the basis for his GCA level—was based on the points he received in five categories. Of the five categories, two were affected by Gaskins' disciplinary violation: "infractions" and "work/vocation." Even assuming Gaskins had received the full 20 points, instead of 15, in the infractions category, and the full 20 points, instead of 10, in the work/vocation category, both of which were lowered during his 2004 review, his total score would have been 64 points instead of 49.[10] A total

---

**10.** Gaskins contends that the institutional counselor arbitrarily assigns points "as she sees fit," and in support of his contention he points out that he received 14 points out of a total possible 30 points even though he dropped out of school due to illness. Gas-

kins' argument only serves to illustrate that he might have received an even lower score in some categories, thus lowering his classification to level III even without the disciplinary violation.

score of 64 points would still have placed Gaskins within the range of level III. Thus, Gaskins' classification would not have been any higher after his 2004 review regardless of any lost points attributable to his disciplinary violation. Accordingly, Gaskins has failed to state a claim for which relief may be granted and, therefore, this claim must be dismissed.

### IV.

For the above stated reasons, respondent's Motion to Dismiss will be granted and this petition for a writ of habeas corpus will be dismissed. An appropriate order shall issue.