**Allan N. DILLON, Plaintiff,**

v.

**Edward W. MURRAY, Larry W. Huffman, and Lawrence W. Dury, III, Defendants.**

**Civ. A. No. 91–0654–R.**

United States District Court,
W.D. Virginia,
Roanoke Division.

May 4, 1994.

Margaret Lorraine McLeod Cain, Margaret McLeod Cain, Charlottesville, VA, for plaintiff.

Martha Murphey Parrish, Office of Atty. Gen., Richmond, VA, for defendants.

### MEMORANDUM OPINION

MICHAEL, District Judge.

Defendants have moved for summary judgment in this case filed by Plaintiff under 42 U.S.C. § 1983 for the alleged acts of retaliation by Defendant Lawrence Dury, III. Plaintiff also charges the supervisory Defendants, Larry Huffman and Edward Murray, with failure to protect him against the allegedly retaliatory actions of Dury.[1] By order entered March 8, 1994, the court placed the parties on a briefing schedule for resolution of the summary judgment motion and announced that it would determine the matter without oral argument. All briefs having been properly filed with the court, the matter is now ripe for disposition. For the reasons indicated more fully herein, the court shall grant the Motion for Summary Judgment of the supervisory Defendants but deny the motion as to Defendant Dury.

---

1. In his complaint, Plaintiff alleges that Defendants have violated his constitutional rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments. After sorting through the often inartfully drafted pleadings and facts, the court finds that the case may be stripped down to allegations relating to acts of retaliation by Dury against Plaintiff for Plaintiff's filing of a separate lawsuit against Dury as well as to the tacit authorization by the supervisory defendants of Dury's actions. The court dismisses summarily any retaliation claim based upon the Fourth Amendment, finding no illegal search or seizure of Plaintiff's prison cell based on the facts in this case.

## I. FACTS

The court finds unnecessary the narration of the graphic details of the incident which occurred in Plaintiff's cell on September 8, 1989. Suffice it to say, Defendant Dury, an Investigator with the Internal Affairs Division for the Virginia Department of Corrections (VDOC), was assigned to investigate a sexual assault which had allegedly occurred in the prison cell of Plaintiff at the Augusta Correctional Center (ACC). Plaintiff alleges that on September 8th, his fellow inmate, Robert Quinney, identified as "California", entered Plaintiff's cell, placed pillows in the cell window, and forced Plaintiff into oral and anal sodomy by the use of threats and a razorblade held against Plaintiff. During these activities, Plaintiff claims he sustained a cut on the upper inside of his right leg for which he received medical treatment.

Plaintiff further states that while he was in the ACC infirmary, Dury found in Plaintiff's footlocker certain papers relating to a lawsuit which Plaintiff intended to file against another VDOC employee, George Taylor, and Dury.[2] Dury also discovered a bloodstain on the bedsheet, hand lotion and hair grease, allegedly used by Quinney to facilitate the sodomy, a razorblade and a note written by Plaintiff to his roommate indicating that Plaintiff had been raped. Plaintiff alleges that during an interview at the King's Daughters Hospital later during the morning of the 8th, Dury questioned Plaintiff about the events surrounding the sexual assault and confronted him with the paperwork which Dury had found in Plaintiff's cell. Plaintiff maintains that Dury denied Plain-

---

2. The lawsuit involved the alleged sexual battery of Plaintiff by Taylor, a VDOC rehabilitation counselor, on three separate occasions in January, 1989 at the Staunton Correctional Center. Plaintiff claimed that Dury caused Plaintiff to sustain further injury from Taylor due to Dury's alleged delay in investigating Plaintiff's complaint against Taylor. George Taylor was eventually terminated from state employment following the VDOC investigation into and verification of the charges against him.

tiff's request to contact the institutional attorney, John Appleford, and threatened that he would make impossible Plaintiff's early release from prison if Plaintiff did not remove Dury's name from the Taylor lawsuit.

Plaintiff believes that as a result of his refusal to dismiss Dury from the lawsuit against Taylor, Dury filed a criminal complaint against Plaintiff in Augusta County General District Court for submitting false information as to the commission of the September 8th sexual assault. On January 16, 1990, the state court adjudged Plaintiff not guilty of the charge, finding "just enough" evidence that Plaintiff's report to Dury regarding the Quinney incident was not false.[3] Plaintiff further claims that Dury impeded his ability to file criminal charges against Quinney until January 20, 1990 and that he sustained substantial injury when the charges against Quinney were dismissed. Finally, Plaintiff alleges that Defendants Larry Huffman, Warden of ACC, and Edward Murray, VDOC Director, ignored his requests for protection against Dury's acts of retaliation.

Asserting violations of his constitutional rights to access the courts and to be free from retaliation by a prison official, Plaintiff filed this § 1983 complaint, seeking compensatory and punitive damages against Defendants and a jury trial for the resolution of his claims. The court must now undertake to settle the questions posed by Defendants' summary judgment motion.

## II. ANALYSIS

Summary judgment is appropriate if there are no genuine issues of material fact from which the non-moving party could prevail. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Judgment as a matter of law may be entered only where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505,

2510–11, 91 L.Ed.2d 202 (1986), such as where the non-moving party has failed to make a sufficient showing on an essential element of a claim upon which he bears the burden to prove. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The non-moving party must respond to a motion, by affidavit or other verified evidence, with specific facts showing a genuine issue for trial and may not rest on the allegations contained in the pleadings alone. *Id.;* Fed.R.Civ.P. 56(e). Neither may the non-moving party rely on a "scintilla of evidence", *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986), or mere speculation through the laying of one inference upon the other, *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985), to defeat the motion. In deciding the motion, the court must draw all inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986); *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979).

### A. Retaliation by Dury

A prison official's retaliation against an inmate for exercising the right of access to the courts establishes the basis for a claim in a § 1983 action. *Hudspeth v. Figgins,* 584 F.2d 1345 (4th Cir.1978), *cert. denied,* 441 U.S. 913, 99 S.Ct. 2013, 60 L.Ed.2d 386 (1979); *American Civil Liberties Union v. Wicomico County,* 999 F.2d 780, 785 (4th Cir.1993) (instigation of lawsuit implicates First Amendment right of access to courts). In order to prove a retaliation claim, the prisoner must demonstrate that his litigation activities constituted the actual motivating factor, *McDonald v. Hall,* 610 F.2d 16 (1st Cir.1979), or the "but for" cause of the conduct, *Huang v. Board of Governors,* 902 F.2d 1134, 1140 (4th Cir.1990) (citations omitted). The failure to establish that the retaliation adversely impacted the prisoner's exercise of his constitutional rights is fatal to the prison-

---

3. In its decision from the bench, the court expressed the belief that the case was a difficult one and stated that some of the evidence, e.g. the grease, suggested that Plaintiff had prepared or

fabricated the incident. *See* Exhibit 8, p. 166 to Plaintiff's Motion to Dismiss Summary Judgment.

er's case. *American Civil Liberties Union,* 999 F.2d at 785.

■ In his affidavit attached to his Motion to Dismiss Summary Judgment, Plaintiff insists that Dury retaliated against him after discovering the materials relating to Plaintiff's potential lawsuit against Taylor in which Dury was also named as a defendant. The alleged acts of retaliation committed or caused to be committed by Dury include: the institution of criminal charges against Plaintiff by Dury for the filing of a false report; the denial of access to the institutional attorney, Appleford; the threats by Dury that he would see to it that Plaintiff served "hard time" and that it would be a "cold day in hell" before Plaintiff was released; the delay by Dury in prosecuting Quinney for the alleged rape against Plaintiff; the placement of Plaintiff in "C" custody and segregation; the prosecution of Plaintiff for possession of a weapon, namely a razorblade; and the denial of certain items, food and recreation while Plaintiff remained in the infirmary. Plaintiff theorizes that Dury committed the aforementioned acts in violation of what he believes to be protected constitutional rights because Plaintiff refused to remove Dury as a possible defendant in the threatened lawsuit against Taylor.

Dury disputes the acts which Plaintiff alleges Dury committed or caused to be committed. In his affidavit, Dury disagrees with Plaintiff as to the time when Dury learned of the Taylor lawsuit, insisting that he did not become aware of the potential litigation until the second interview with Plaintiff on Sep-

tember 8th at the ACC infirmary.[4] Dury denies ever having discovered or examined any legal materials in the footlocker in Plaintiff's cell or having attempted to persuade Plaintiff to drop Dury's name from the lawsuit. Dury also repudiates the contention that he informed Plaintiff that he had no rights, that he denied Plaintiff or had the ability to deny Plaintiff's access to the Magistrate,[5] that Dury would see to it that Plaintiff serve an extended sentence or that he threatened Plaintiff in any way.

In their Motion for Summary Judgment, Defendants concede that the parties disagree as to some of the details surrounding the incident. However, Defendants urge the court to grant summary judgment on Plaintiff's retaliation claim on the basis that Dury had probable cause to bring criminal charges against Plaintiff for the filing of a false report. Defendants argue that Dury had reasons independent of Plaintiff's threat to sue Dury for filing the false report charges against Plaintiff and, thus, that Plaintiff's litigation activities were not the motivating factor behind the institution of criminal charges against Plaintiff.

■ The court agrees that Dury may have had probable cause, or at least a good faith reliance on the magistrate who entered the arrest warrant, to file the false report charges against Plaintiff and, thus, may be entitled to qualified immunity. *See Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (judicial officer's finding of probable cause to issue arrest warrant will

4. The first interview between Dury and Plaintiff occurred at approximately 11:30 a.m. at King's Daughters Hospital and was, according to Dury, a standard investigative interview as to the facts surrounding the Quinney rape incident. The second interview of Plaintiff occurred while Plaintiff was in the institutional infirmary, subsequent to Dury's search of Plaintiff's cell and his interviews with other inmates. Dury maintains that he permitted Sgt. Brackman to continue the second interview after Plaintiff became unresponsive when Dury began questioning Plaintiff about inconsistencies with his statements made during the first interview. Dury claims that he listened to Brackman's conversation with Plaintiff through an institutional intercom system and overheard Plaintiff inform Brackman that Plaintiff was suing Dury.

5. Defendants suggest that Plaintiff had the ability to contact the magistrate directly, without assistance from a prison officer, in order to file a complaint. Consequently, Defendants maintain that Plaintiff sustained no injury because he succeeded in filing charges against Quinney. The four-month delay in filing those charges does not constitute a denial of access and, thus, cannot cause injury according to Defendants. While the court finds that Plaintiff may not have suffered constitutional harm because he was not altogether denied access to the magistrate to institute a complaint against Quinney, the alleged threats by Dury may have intimidated Plaintiff and give this court pause in resolving the question of whether dismissal of the retaliation claim is appropriate here.

not protect officer from liability for unlawful arrest if officer knew or should have known probable cause did not exist). Qualified immunity is available under *Harlow v. Fitzgerald,* 457 U.S. 800, 815–16, 102 S.Ct. 2727, 2736–37, 73 L.Ed.2d 396 (1982) in the situation where an officer's action does not violate clearly established statutory or constitutional rights of which a reasonable officer would have known. However, Plaintiff has sufficiently alleged other acts which, if taken as true, might lead a rational trier of fact to conclude that Dury injured Plaintiff through retaliation following discovery of Plaintiff's intent to sue Dury. While Dury's institution of false report charges against Plaintiff may have been objectively reasonable, Plaintiff raises other allegations, including Dury's acts of verbally threatening Plaintiff that he would serve "hard time" and that it would be a "cold day in hell" before Plaintiff was released from prison and causing the placement of Plaintiff in "C" custody and segregation following the rape incident, which suggest that all of Dury's actions may have been improperly motivated. *See Collinson v. Gott,* 895 F.2d 994, 1002 (4th Cir.1990) (Phillips, J., concurring). Although, Plaintiff has proffered nothing more than his own affidavit to support his contention that Dury acted in retaliation, and the court finds these allegations tenuous at best, the court cannot say that a fact-finder could not reasonably find the requisite "but for" causation. Consequently, the court disagrees that summary judgment should be granted as to the retaliation claim.

The case will likely come down to a spitting match at trial, with a jury determining whose version of the facts—either that of Plaintiff or Dury—is the more credible one as to whether Dury did indeed act in retaliation against Plaintiff because of Plaintiff's threatened lawsuit against Dury. Because this court finds issues of material fact sufficiently in dispute over the retaliation claim, and because all inferences must be drawn in favor of Plaintiff, Defendants' Motion for Summary Judgment on the retaliation claim against Dury shall be denied.

**B.** *Liability of Supervisory Defendants*

 Plaintiff suggests alternate theories of liability against Defendants Huffman and Murray in his Motion to Dismiss Summary Judgment: one, on the basis of *respondeat superior;* and the other, under a theory of supervisory liability. To the extent that Plaintiff seeks to impose liability against Defendants Huffman and Murray under a *respondeat superior* theory, such claim is barred under 42 U.S.C. § 1983. *See Monell v. Department of Social Servs.,* 436 U.S. 658, 694 n. 58, 98 S.Ct. 2018, 2037 n. 58, 56 L.Ed.2d 611 (1978); *Slakan v. Porter,* 737 F.2d 368 (4th Cir.1984), *cert. denied,* 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985). Where plaintiff does not claim a direct involvement on the part of a defendant in the alleged violation, he may show that the constitutional deprivation was caused by the exercise of a policy or custom for which the defendant was responsible. *See, e.g., Fisher v. Washington Metro. Area Transit Auth.,* 690 F.2d 1133, 1143 (4th Cir.1982). No institutional policy or custom having been alleged by Plaintiff here, the record precludes a claim asserted against Huffman and Murray on these grounds.

 In the alternative, Plaintiff suggests that Defendants Huffman and Murray may be liable as Dury's institutional supervisors. Supervisory liability may be imposed against an individual for his "tacit authorization" of the misconduct of a subordinate, such inaction being a causative factor in the resulting injuries. *Slakan,* 737 F.2d at 372–73. The supervisor may also be liable for his action or inaction in the training, supervision or control of his subordinates, *see Clay v. Conlee,* 815 F.2d 1164, 1170 (8th Cir.1987), without proof of an official policy, *see City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). When the plaintiff claims that it was the supervisor's inaction which caused the constitutional injury, the inaction must rise to the level of reckless disregard, gross negligence or deliberate indifference in order to be actionable at law. *See Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 562 (1st Cir.1989); *Meriwether v. Coughlin,* 879 F.2d 1037, 1048 (2nd Cir. 1989).

■ The basis of Plaintiff's claim against the supervisory Defendants here is that both Huffman and Murray ignored Plaintiff's requests for protection against Dury's alleged acts of retaliation. The Fourth Circuit has established a three-part test by which a supervisor may be held liable for the actions of a subordinate. First, the supervisor must have actual or constructive knowledge that the subordinate was engaged in conduct posing a pervasive and unreasonable risk of constitutional injury. Second, the supervisor's response to the conduct must be so inadequate so as to constitute deliberate indifference. Third, the plaintiff must establish an affirmative link between the supervisor's inaction and the resulting injury. *See Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). To prove that the subordinate's conduct posed a pervasive and unreasonable risk of harm, the plaintiff must produce evidence "that the conduct is widespread, or at least has been used on several different occasions." *Id.* (citing *Slakan,* 737 F.2d at 373–74 (footnote omitted)). In order to establish the supervisor's deliberate indifference, the plaintiff may not rely on a single, isolated incident but must show " 'continued inaction in the face of documented widespread abuses.' " *Id.* at 799–800 (finding factual issues as to whether the supervisor was deliberately indifferent based on supervisor's knowledge of at least three incidents) (citing *Slakan,* 737 F.2d at 372–73).

■ Plaintiff here submits two letters, one written to Huffman and the other to Murray, in support of his proposition that Defendants had knowledge of Plaintiff's requests for protection from Dury's retaliatory conduct. By letter dated September 11, 1989, Plaintiff's attorney, Steve Rosenfield, apprised Warden Huffman of his concerns for the alleged rape against Plaintiff, demanded that Huffman provide counselling to Plaintiff and requested an internal investigator, other than Dury, to review the incident in light of Dury's "threats to [Plaintiff] from past investigations." *See* Plaintiff's Exhibit 4 to Motion to Dismiss Summary Judgment.[6] However, Plaintiff submits no evidence, affidavit or otherwise, other than the September 11, 1989 letter and a bald allegation that he contacted Huffman himself on September 21, 1989, to prove that Defendant Huffman acted with deliberate indifference to Plaintiff's requests for protection. There is nothing in the pleadings to suggest that Huffman was put on notice that Dury's conduct was "widespread" or was "used on several different occasions." Plaintiff, via the letter to Huffman from attorney Rosenfield, refers only generally to threats made by Dury to Plaintiff during past investigations, yet provides no specific examples of conduct which would put Huffman on notice and make him accountable for any subsequent deliberate indifference. The record reveals the occurrence of nothing more than one single, isolated incident—that of Rosenfield's letter to Huffman. Plaintiff has failed to provide specific evidence, other than his own belief that Huffman did nothing in response to Rosenfield's general assertion of Dury's threats, that the warden exhibited "continued inaction in the face of documented widespread abuses." As a consequence, the court finds that Plaintiff has failed to meet his substantial burden of proving a prima facie case of supervisory liability against Defendant Huffman under *Slakan* and *Shaw,* and summary judgment shall thus be awarded in favor of Defendant Huffman.

■ The record is even more barren as to Plaintiff's supervisory liability claim against Defendant Murray. In opposing Defendants' summary judgment motion, Plaintiff produced one letter addressed to Murray, dated January 31, 1990, in which Plaintiff asks Murray to respond to an unidentified

6. Plaintiff also submits, as evidence of Huffman's knowledge, a copy of the Adjustment Committee Appeal Response, dated October 13, 1989, relating to the charge filed against Plaintiff for possessing a weapon or sharpened instrument. In the response, Huffman denied Plaintiff's appeal of the Adjustment Committee's September 18, 1989 finding that Plaintiff did possess a sharpened instrument, namely a razorblade. The court can find nothing in Huffman's response which indicates tacit approval of some type of misconduct on the part of Dury in filing the criminal charges for Plaintiff's submission of a false report. The Appeal Response relates to an entirely separate matter and indicates that it was Sgt. Brackman, not Defendant Dury, who was the reporting officer.

appeal filed by Plaintiff and originally sent to a W.P. Rogers, Regional Administrator. *See* Exhibit 7 to Plaintiff's Motion to Dismiss Summary Judgment. Plaintiff complains therein to Murray, not about his need for protection against retaliation or the impediments to his filing of a lawsuit against inmate Quinney, but about the failure of Mr. W.P. Rogers to respond in a timely fashion to an inexplicit appeal, the details of which remain undisclosed to this court. The court can hardly see how Huffman may be charged with knowledge of a pervasive and unreasonable risk of harm posed by Dury where the only evidence offered by Plaintiff is his letter regarding the unidentified appeal. The letter fails to document widespread abuses, and there is no evidence that Murray failed to respond, continually or otherwise, to a known risk of injury. Accordingly, the court holds that Plaintiff has failed to state a claim of supervisory liability against Defendant Murray, and the motion for summary judgment shall be granted in favor of Defendant Murray as well.[7]

### III. CONCLUSION

For the aforementioned reasons, the court finds triable issues of material fact surrounding whether Defendant Dury discovered Plaintiff's paperwork relating to the Taylor lawsuit and acted in retaliation against Plaintiff based upon that discovery. The court cannot discern, however, any disputed issues relating to Plaintiff's claim against the supervisory Defendants, Huffman and Murray. Finding no basis in the record upon which liability may be imposed against the VDOC Director or the ACC warden for the alleged acts of retaliation by Dury against Plaintiff, the court shall grant the Motion for Summary Judgment as to Defendants Huffman and Murray.

An appropriate Order shall this day issue.

---

**7.** The court declines to discuss the third element in the plaintiff's prima facie case for supervisory liability, finding such discussion unnecessary since Plaintiff has failed to satisfy the first elements in the claims against Defendants Huffman

and Murray. Notwithstanding this failure, the court has combed the record for proof of an affirmative causal link between any inaction on the part of Defendants and Plaintiff's injury and has failed to find the requisite causation.