Dan OLIVER, Plaintiff,

v.

H. POWELL, et al., Defendants.

No. CIV.A. 01–411–AM.

United States District Court, E.D. Virginia, Alexandria Division.

Sept. 4, 2002.

Dan L. Oliver, Waverly, VA, pro se.

Pamela Anne Sargent, Office of Atty. Gen, Richmond, VA, for defendants.

## MEMORANDUM OPINION

HILTON, Chief Judge.

This matter is before the Court on cross Motions for Summary Judgment. On December 28, 2001, the Court received responsive materials from the plaintiff. Thus, this matter is ripe for disposition. For the reasons that follow, defendants' Motion for Summary Judgment must granted, and plaintiff's Motion for Summary Judgment must be denied.

### I.

Plaintiff was incarcerated at Southampton Correctional Center from December 28, 1999 through October 6, 2000. This action presents a laundry list of claims alleged during his stay there. Plaintiff raises the following claims in his complaint:

1. Defendants filed false disciplinary charges against him in retaliation for lawsuits filed against prison officials;

2. Defendants held plaintiff in his cell past his allotted law library time;

3. Defendants returned plaintiff's personal mail without notice to him, nor an explanation to the sender of the reason for the return;

4. Defendants called plaintiff out of school and harassed him about his grievances;

5. Defendants issued passes in conflict with his school schedule;

6. Defendants woke plaintiff at 11:30 p.m. to deliver his mail;

7. Defendants limited plaintiff to one grievance per week for 135 days because he filed them against prison officials;

8. Defendants refused to investigate an assault on plaintiff committed by an inmate and an officer;

9. Defendants assaulted plaintiff by poking him in the back just because he did not hear them;

10. Defendants opened plaintiff's legal mail outside his presence on two occasions;

11. Defendants refused to send plaintiff's letters to the governor and others;

12. Defendants deprived plaintiff of sleep while housed in the segregation unit by making noise;

13. Defendants transferred plaintiff to a higher classification level facility based on false disciplinary charges;

14. Defendants placed plaintiff in a segregation cell with roaches, leaky toilets, peeling paint, and writing on the walls;

15. DOP 851, VDOC's policy regarding the processing of general correspondence, is unconstitutional, depriving plaintiff of his First, Fourth, Fifth, and Fourteenth Amendment rights;

16. DOP 861.6–5, a VDOC regulation authorizing fines for disciplinary charges filed, is unconstitutional, depriving plaintiff of his First, Fourth, Fifth, and Fourteenth Amendment rights;

## II.

The principles governing disposition of summary judgment motions are well-established. On a motion for summary judgment, the moving party must demonstrate that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The facts themselves, and the inferences to be drawn from those facts, must be viewed in the light most favorable to the non-moving party. *See Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985). Summary judgment is appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The opposing party must do more than "simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Moreover, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Only factual disputes that "might affect the outcome of the suit under governing law will properly preclude ... summary judgment." *Id.* at 248, 106 S.Ct. 2505. And finally, where the non-moving party bears the burden of proof at trial, as here, "Rule 56(e) requires the non-moving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.' " *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

## III.

■ As a preliminary matter, defendants Johnson, Harrison, and Gilmore must be dismissed from the outset. To establish § 1983 liability, a plaintiff must affirmatively show that the "official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins,* 766 F.2d 841, 850 (4th Cir.1985) (citations and quotations omitted). *Accord Garraghty v. Virginia,* 52 F.3d 1274, 1280 (4th Cir.1995); *Wheeler v. Gilmore,* 998 F.Supp. 666, 668 n. 5 (E.D.Va.1998). Moreover, plaintiff may not avail himself of the doctrine of respondeat superior, as this doctrine is inapplicable to § 1983 claims. *Wright,* 766 F.2d at 850. Thus, each named defendant must have had personal knowledge of and involvement in the alleged violations of plaintiff's constitutional rights for the action to proceed against them. In the instant complaint, plaintiff fails to include defendants Johnson and Harrison in any of the allegations. Moreover, defendant Gilmore is mentioned peripherally. Thus, it is clear that plaintiff included these defendants in an attempt to implicate them under the doctrine of respondeat superior.

■ It is a well-established principle that respondeat superior is not a basis for liability under 42 U.S.C. § 1983. Phrased differently, § 1983 does not permit a state official to be held liable solely because one of his or her employees committed a tort. *See Monell v. Dep't of Soc. Serv. of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

■ The doctrine of supervisory liability, however, renders supervisors liable under § 1983 for constitutional torts committed by employees in furtherance of official policies, including regulations, ordinances, decisions, and informal customs. *See id.* at 690–91, 98 S.Ct. 2018. The

Fourth Circuit has held that supervisors may also be held liable for indifference or tacit authorization of subordinates' misconduct. *See Slakan v. Porter,* 737 F.2d 368, 372 (4th Cir.1984); *Wellington v. Daniels,* 717 F.2d 932, 935–36 (4th Cir.1983) (holding that municipalities may be liable for "omissions," which include indifference or tacit authorization).

■ In making a claim of supervisory liability in the prison context, a plaintiff has the burden of showing that "prisoners face a pervasive and unreasonable risk of harm from some specified source [and that] the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization...'." *Slakan,* 737 F.2d at 373 (quoting *Orpiano v. Johnson,* 632 F.2d 1096, 1101 (4th Cir.1980)). Moreover, a plaintiff "cannot satisfy this burden of proof by pointing to a *single incident or isolated incidents* ...." *Id.* (emphasis added). Instead, supervisory liability may only be imposed where "there is a history of widespread abuse." *Wellington,* 717 F.2d at 936. Therefore, a plaintiff who is able to prove deliberate indifference, tacit authorization, or widespread and pervasive abuses may be able to establish supervisory liability under 42 U.S.C. § 1983. No such showing has been made in the instant action. Therefore, defendants Johnson, Harrison, and Gilmore must be dismissed.

■ Further, plaintiff names "all of Southampton Correctional Center" as a defendant in this action. Correctional centers and jails are immune under § 1983 and are not considered proper defendants. *See McCoy v. Chesapeake Corr. Ctr.,* 788 F.Supp. 890 (E.D.Va.1992). Therefore, insofar as plaintiff names Southampton Correctional Center as a defendant, it must be dismissed.

IV.

In their motion for summary judgment, defendants raise the defense of qualified immunity. "To avoid excessive disruption of government, a qualified immunity is recognized to protect government officials performing discretionary functions from civil damage suits insofar as the official's conduct does not violate clearly established rights of which a reasonable person would have known." *Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 685 (4th Cir.2000) (internal quotations omitted). The Supreme Court of the United States has adopted a two-prong test for evaluating claims of qualified immunity. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002). "[I]f so, [the court must] then proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Moreover, with regard to the latter inquiry, it must be determined whether a reasonable state official could have understood that the conduct at issue violated the clearly established right. *See, e.g., Henderson v. Simms,* 223 F.3d 267, 273 (4th Cir.2000).

Thus, analyzing the application of qualified immunity requires that the Court first review the merits of plaintiff's constitutional claims. In the instant case, plaintiff has not alleged a deprivation of an actual constitutional right. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. As a result, the Court need not proceed beyond the initial inquiry.

## Claim 1

Plaintiff sets forth many instances in which he claims that defendants filed false disciplinary charges in retaliation for a § 1983 action he filed against Southampton Correctional Center and Sussex I State Prison. Among them, he claims that defendants Powell, Pixley, Grizzard and Fleming failed to act when: plaintiff informed him that defendant Hedgepeth was willing to lie about plaintiff threatening him; officers lied, stating that plaintiff did not want to be present at his disciplinary hearing and falsified dates on a disciplinary charge; defendant Sykes filed false disciplinary charges against plaintiff for use of profanity and disobeying a direct order on two separate occasions; defendant Sykes lied about plaintiff's commissary privileges and falsely informed plaintiff that he could enter the staff mess hall to talk to a prison official; defendant Bynum threatened to lie and state that plaintiff threatened her and filed a false disciplinary charge against him; that he was being subjected to false disciplinary charges due to a § 1983 action filed against defendants; and that defendant Hedgepeth violently pulled the clear plastic from his cell door after he dropped a grievance against him.

■ Prisoners have a constitutional right to meaningful access to the courts, with which the state may not interfere. *Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir.1978). Although not expressly addressed in the Constitution, a prisoner may also bring a retaliation claim against a prison employee because such action may tend to chill plaintiff's exercise of constitutional rights. *Ballance v. Young*, 130 F.Supp.2d 762 (W.D.Va.2000). However, if defendant's actions did not "chill, impair, or deny plaintiff's right to exercise his constitutional right, the allegations fail to state a retaliation claim cognizable under § 1983." *Id.* Moreover, a "de minimis inconvenience in exercise of the right" caused by defendant's actions does not state a claim. *Id.*

■ Plaintiff's claims against defendants fail because there is no evidence that plaintiff's constitutional rights have been chilled. "In order to prove a retaliation claim, the prisoner must demonstrate that his litigation activities constituted the actual motivating factor, or the 'but for' cause of the conduct." *Dillon v. Murray*, 853 F.Supp. 199, 202 (W.D.Va.1994) (citations omitted). Where plaintiff claims that he suffered retaliation for filing a lawsuit, he must show that the retaliatory acts adversely impacted his right to access the courts. *Talbert v. Hinkle*, 961 F.Supp. 904, 911 (E.D.Va.1997) (citing *Wicomico County*, 999 F.2d at 785).

■ Nowhere does plaintiff mention his inability to prosecute his previously filed civil actions against prison officials. In fact, during the relevant period, plaintiff filed at least three separate civil actions against prison officials in this Court. *See Oliver v. Taylor*, No. 00–CV–706 (E.D. Va. June 12, 2000); *Oliver v. Taylor*, No. 00–CV–1131 (E.D.Va. July 28, 2000); *Oliver v. Powell*, No. 00–1643 (E.D. Va. June 19, 2001). Although plaintiff claims that defendants acted in retaliation, plaintiff has suffered no actual harm. Plaintiff has never alleged how his litigation was harmed by defendants' retaliatory actions. Thus, "[b]are assertions of retaliation do not establish a claim of constitutional dimensions." *Garrett v. Angelone*, 940 F.Supp. 933, 944 (W.D.Va.1996).

■ And finally, with respect to plaintiff's claim that defendant Hedgepeth violently pulled clear plastic from his cell door, plaintiff has failed to provide any factual allegations that rise to the level of

a constitutional violation. Therefore, this claim must also be dismissed.

*Claim 2*

 Plaintiff claims that defendants held him in his cell past his allotted law library time. Liberally construed, this may be a claim of interference with plaintiff's right of access to the courts. Prisoners have a fundamental right to "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith,* 430 U.S. 817, 822, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). There are no set parameters of what the right to access to the courts entails. *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). However, it "can be satisfied either by providing prisoners with adequate law libraries or with adequate assistance from persons trained in the law." *Hause v. Vaught,* 993 F.2d 1079 (4th Cir.1993). Moreover, to prove that he has been denied this right, a prisoner must show that he has suffered "actual injury" because of the restrictions imposed by the limited resources available. *See, e.g., Strickler v. Waters,* 989 F.2d 1375, 1382 (4th Cir.1993); *Magee v. Waters,* 810 F.2d 451, 452–53 (4th Cir.1987).

 The requirement of "actual injury" has been held to mean the deprivation of legal materials "actually prevented [plaintiff] from meeting deadlines, or otherwise prejudiced him in any pending litigation, or actually impeded his access to the courts." *Oswald v. Graves,* 819 F.Supp. 680, 683 (E.D.Mich.1993). *See also Bryant v. Lee,* 993 F.2d 1535, 1993 WL 188302 (4th Cir.1993) (unpublished) (two week delay in receiving legal mail caused missed deadlines and lost settlement opportunity); *Sizemore v. Williford,* 829 F.2d 608, 610 (7th Cir.1987). In the instant action, plaintiff has not alleged any facts which establish that defendants' actions prevented him from pursuing pending nonfrivolous litigation.

 Moreover, changes in a prisoner's daily routine, and the denial of privileges are "necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively." *Gaston v. Taylor,* 946 F.2d 340 (4th Cir.1991) (en banc) (citation omitted). *See also DeBlasio v. Johnson,* 128 F.Supp.2d 315 (E.D.Va.2000). Therefore, plaintiff also has no liberty interest against such changes in his confinement.

*Claim 3*

 Plaintiff claims that he "complained of [his] mail being returned to the sender, without notifying me and without explaining to the sender why the letter was returned to them. Which letter contained 75.00, dollars, my monthly income." (Compl. at 3.) To state a civil rights claim, plaintiff must allege that he sustained a deprivation of a right, privilege, or immunity secured by the Constitution or federal law. *See Inmates v. Owens,* 561 F.2d 560 (4th Cir.1977). In addition, plaintiff must have standing to maintain a § 1983 action. To demonstrate standing, plaintiff must allege an actual or threatened injury that is fairly traceable to defendants' allegedly unlawful conduct and likely to be redressed by requested relief. *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); *Valley Forge Christian College v. Americans United for Separation of Church & State,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *Kemler v. Poston,* 108 F.Supp.2d 529 (E.D.Va.2000). In the instant claim, plaintiff fails to specify any defendants, whose actions were fairly traceable to an actual injury. Accordingly, this claim must be dismissed.

*Claim 4*

 Plaintiff alleges that defendants pulled him out of school and harassed him about the grievances he filed. Plaintiff provides no further facts to support this claim. Verbal harassment by prison officials in itself does not state a constitutional deprivation under § 1983. *Johnson v. Laham,* 9 F.3d 1543, 1993 WL 469160 (4th Cir.1993) (unpublished). *See also Feazell v. Augusta County Jail,* 401 F.Supp. 405, 407 (W.D.Va.1975) (generalized assertion of harassment without factual support fails to state § 1983 claim); *Morrison v. Martin,* 755 F.Supp. 683, 687 (E.D.N.C.1990) (threatening language of prison official, even if true, does not amount to constitutional violation). Thus, plaintiff's allegation, without more, fails to state a claim and must be dismissed.

*Claim 5*

 Plaintiff contends that defendants issued passes in conflict with his school schedule. As stated previously, plaintiff must allege that he sustained a deprivation of a right, privilege, or immunity secured by the Constitution or federal law in a § 1983 claim. *See Inmates v. Owens,* 561 F.2d 560 (4th Cir.1977). Plaintiff's claim does not allege the deprivation of a federal constitutional right, and thus does not state a claim under 42 U.S.C. § 1983. Accordingly, claim 5 must be dismissed.

*Claim 6*

 Plaintiff finds fault with the delay in the delivery of his mail. Plaintiff claims that mail should be delivered at 8:00 a.m., however, defendants often deliver it at 11:30 p.m., waking him from sleep. In response, defendants have submitted the affidavit of defendant Pixley, outlining the mail processing procedure.

[M]ail is processed between the hours of 12:30 p.m. and 3:00 p.m. each day. General purpose correspondence for inmates is distributed by security staff at their convenience. Due to the large quantity of mail received at this facility, time does not permit staff to pass out mail during the movement of inmates. Depending on the daily volume of mail, mail may be passed out to inmates very late in the evening.

(Pixley Aff. ¶ 9.)

Although posing a slight inconvenience to plaintiff's sleep schedule, the time required to process the mail is permissible within constitutional limits. *See Fore v. Godwin,* 407 F.Supp. 1145 (E.D.Va.1976) (eighteen-hour mail processing time, although lengthy, is not unconstitutional). Thus, even if plaintiff's allegations are taken to be true, plaintiff fails to state a claim.

*Claims 7 and 8*

 Plaintiff claims that defendants limited the number of grievances he could file, and that they refused to investigate an assault committed by an inmate and an officer. Plaintiff's claims fail because state inmates have "no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir.1994) (citations omitted); *Mitchell v. Murray,* 856 F.Supp. 289, 294 (E.D.Va. 1994). "When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance." *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991); *accord Adams,* 40 F.3d at 72; *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Thus, if plaintiff believes that defendants' failure to respond to his grievances regarding an alleged assault has resulted in injury to plaintiff's constitutionally protected interests, plaintiff may file a

claim under 42 U.S.C. § 1983 to redress that particular injury. Furthermore, because plaintiff is not entitled to any grievance procedure, he cannot state a claim by alleging that the number of grievances allowed were limited, as it presents no constitutional claim.

*Claim 9*

■ Plaintiff claims that defendants assaulted him by poking him in the back simply because he did not hear them. Liberally construed, this is a claim of excessive use of force. The Eighth Amendment, enforced against the states through the Fourteenth Amendment, provides inmates protection from the application of excessive force by correctional officers. *Whitley v. Albers,* 475 U.S. 312, 318–19, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). To prove a claim of excessive force, the prisoner must satisfy two requirements. *Stanley v. Hejirika,* 134 F.3d 629, 633–35 (4th Cir.1998). First, the prisoner must establish that the force "inflicted unnecessary and wanton pain and suffering." *Id.* at 634 (quoting *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)).

Courts must determine "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley,* 475 U.S. at 320–21, 106 S.Ct. 1078 (citing *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)). Thus, the inmate must show "that the correctional officers acted with a sufficiently culpable state of mind." *Stanley,* 134 F.3d at 634. However, "not ... every malevolent touch by a prison guard gives rise to a federal cause of action." *Riley v. Dorton,* 115 F.3d 1159, 1167 (4th Cir.1997).

■ To bring a civil rights claim, a prisoner must show actual physical injury. 42 U.S.C. § 1997e(e). Although an injury need not be significant to violate the Eighth Amendment, something more than *de minimis* injury is required. *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *see also Norman v. Taylor,* 25 F.3d 1259 (4th Cir.1994) (en banc) (generally, no Eighth Amendment excessive force claim exists where any injury sustained by plaintiff is *de minimis* ). *See, e.g., Taylor v. McDuffie,* 155 F.3d 479, 482 (4th Cir.1998) (abrasions on wrists and ankles, slight swelling in jaw area and tenderness in the rib area considered *de minimis* ); *Norman v. Taylor,* 25 F.3d 1259, 1261 (4th Cir.1994) (persistent pain in thumb considered *de minimis* ); *Marshall v. Odom,* 156 F.Supp.2d 525, 530 (D.Md.2001) (headache, abrasion, numbness and swelling considered *de minimis* ).

*De minimis* injuries correlate to *de minimis* force. *Norman,* 25 F.3d at 1262. However, "[a] prisoner that has sustained a de minimis injury may still establish an Eighth Amendment violation under extraordinary circumstances." *Marshall,* 156 F.Supp.2d at 530–31. Extraordinary circumstances occur where "the force used [is] of a sort repugnant to the conscience of mankind" or the resulting pain lifts the injury out of the *de minimis* category. *Id.* at 531 (quoting *Taylor,* 155 F.3d at 483).

Second, the prisoner must show that the officer's actions, taken in context, were "objectively harmful enough to offend contemporary standards of decency." *Stanley,* 134 F.3d at 634 (internal citations omitted). For this requirement, courts weigh "the force applied and the seriousness of the resulting injury against the need for the use of force and the context in which that need arose." *Stanley,* 134 F.3d at 634; *see also Williams v. Benjamin,* 77 F.3d 756 (4th Cir.1996).

Under these principles, plaintiff does not state a claim of excessive force. A mere

poke in the back fails to present an actual injury. Plaintiff has not alleged any extraordinary circumstances to compensate for a de minimis injury. Accordingly, this claim is without any merit.

*Claim 10*

■ Plaintiff claims that defendants opened his legal mail outside his presence on two occasions. The negligent opening of a prisoner's legal mail, on limited occasions, does not state a § 1983 claim. *Bryant v. Winston,* 750 F.Supp. 733, 734 (E.D.Va.1990) (citation omitted). Plaintiff has shown no evidence to indicate that prison officials make a "pattern or practice of opening or interfering with the delivery of legal mail," and thus, plaintiff's claim does not rise to the level of a constitutional violation. *Id.* Therefore, because it is apparent that the two occasions on which plaintiff's legal mail was opened outside his presence were isolated incidents, plaintiff's claim fails, and must be dismissed.

*Claim 11*

■ Plaintiff alleges that defendant Daniels refused to send his letters to the "governor and others." No other supporting facts are provided. It is not clear what injury plaintiff sustained as a result of this allegation, nor is it apparent how this incident arose. Therefore, because this claim is extremely vague, and without more, fails to state a claim, it must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

*Claims 12 and 14*

"In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements-that the 'deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.' " *Shakka v. Smith,* 71 F.3d 162, 166 (4th Cir.1995) (citations omitted).

In determining whether a deprivation is sufficiently serious, we must keep in mind that "the ordinary discomfort accompanying prison life is part and parcel of the punishment [of those] convicted of criminal offenses ..." *Id.* (citations omitted). Therefore, the Eighth Amendment "does not mandate comfortable prisons, and only those deprivations denying minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

■ Secondly, the subjective element is satisfied by demonstrating that defendants acted with deliberate indifference toward the deprivation. Therefore, prison officials must not only be aware of the underlying facts leading to the deprivation, but they must also "draw the inference that the prisoner is exposed to a specific danger." *DeBlasio,* 128 F.Supp.2d at 325 (citing *Rich v. Bruce,* 129 F.3d 336, 338 (4th Cir.1997)).

■ Under that rubric of analysis, plaintiff's claims are examined. First, plaintiff claims that defendants deprived him of sleep while housed in the segregation unit, keeping him up with their singing, talking, and otherwise making noise. Second, plaintiff claims that he was placed in a segregation cell with roaches, leaky toilets, peeling paint, and writing on the wall. In the context of cruel and unusual punishment, plaintiff's allegations, even if assumed as true, do not rise to the level of an Eighth Amendment claim. Neither of plaintiff's claims lie outside the scope of ordinary discomfort accompanying prison life.

Communal living conditions, such as the case in prison, will inherently produce some undesirable characteristics, such as unwelcome noise. However, noise in the

cell blocks are part of the ordinary incidents of prison life. It is doubtful that any prison environment will remain completely silent when inmate are trying to sleep. Therefore, plaintiff's claim does not rise to the level of cruel and unusual punishment.

With respect to plaintiff's cell conditions. Plaintiff submitted an informal complaint about roaches in his cell, to which defendants provided a sticky trap and directions for its use. (Pixley Aff. ¶ 13.) Plaintiff was instructed that if roaches were caught in the trap, the cell would be treated additionally for pests. *Id.* However, plaintiff was moved to a different cell before any roaches were caught, and plaintiff indicated that he did not have roach problems in his new cell. *Id.* Thus, for all intents and purposes, the roach complaint became moot. Defendants cannot be blamed for doing nothing more when plaintiff himself neglected to follow through with the complaint. With regard to leaky toilets, inmates may report plumbing problems to the building officer who may fill out a work order and notify maintenance to schedule repairs. (Pixley Aff. ¶ 16.) It is not clear from the record whether plaintiff pursued this solution, or if he did, whether defendants failed to respond. Nonetheless, minor plumbing problems, and less than pristine cell conditions are ordinary incidents of prison life.

Moreover, with respect to the subjective element of an Eighth Amendment analysis, plaintiff has failed to show that defendants were deliberately indifferent to plaintiff's needs. Rather, defendants attempted to rectify the issues raised by plaintiff, but plaintiff, for whatever reasons, chose not to pursue resolution. Therefore, plaintiff's Eighth Amendment claims must be dismissed.

*Claim 13*

 Plaintiff has challenged his custody, security, and good time credit earning level classifications. He claims that defendants transferred him to a higher classification level facility based on false disciplinary charges. The court takes judicial notice of the fact that all of these classifications are subject to change at any time during an inmate's incarceration, based on the behavior of the inmate and the discretion of prison officials. A prison regulation creates a liberty interest and implicates federal due process protections only where the regulation imposes upon the inmate conditions which dramatically depart from the expected conditions of his indeterminate sentence. *See Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Since custody and security status and good time earning rates are subject to change, a specific change to these classifications does not implicate federal due process protections. *See id; see also Garrett v. Angelone,* 940 F.Supp. 933, 943 (W.D.Va.1996). Therefore, plaintiff's claim must be dismissed.

*Claim 15*

Plaintiff claims that DOP 851, VDOC's policy regarding inmate correspondence,[1] is unconstitutional. Specifically, he contends that the policy forces inmates to

1. General correspondence is defined as "[m]ail of a general natures sent to an/or received from any addressee not falling within the definition of Legal Correspondence or Special Purpose Correspondence as defined in this procedure." DOP 851.3. Legal correspondence is defined as "[c]orrespondence sent to and/or received from verified attorneys, legal organizations and/or officers of state, federal, and local courts, and tort claims. Outer envelopes must be clearly identified as legal correspondence." *Id.* Special purpose correspondence is defined as "[c]orrespondence sent to and/or received from the Department's Director; Deputy Directors, [and federal and state executive, legislative, and city/county chief administrative offices]." *Id.*

agree to have their general correspondence inspected and read before it is distributed to prisoners, otherwise prisoners may not receive general correspondence. Moreover, plaintiff goes on to claim that the institutional policy of limiting the size and weight of outgoing and incoming mail is also unconstitutional.

DOP 851 provides the following:

Inmates shall be allowed to correspond with families, friends, attorneys, courts and other public officials, and mail programs conducted by agencies and organizations, so long as such correspondence does not pose a threat to the security of the facility . . .

All incoming general correspondence will be opened, searched and may be read by authorized staff. Inmates who choose not to receive general correspondence under the above conditions, shall have it returned to the United States Postal Service.

Incoming general correspondence should be equivalent to or less than . . . [a] one-ounce domestic first class letter.

When incoming general correspondence is disapproved based on the mail exceeding the weight restriction or the inmate choosing not to receive general correspondence in accordance with these procedures, the envelope will be marked [as disapproved for delivery and the reason will be provided].

Prison officials have the authority to "open, examine and censor any mail sent from an inmate when there is reasonable suspicion that it violates state or federal laws, or is used to threaten the security of the institution."

DOP 851.4.

Plaintiff first objects to the fact that per DOP 851, outgoing general correspondence may be opened, inspected, and censored "when there is reasonable suspicion that it

violates state or federal laws, or is used to threaten the security of the institution." DOP 851.4(B)(1). Moreover, plaintiff also objects to the fact that all incoming correspondence is opened, searched, and "may be read by authorized staff."

 First, with respect to incoming general correspondence. It is clear that prisoners still enjoy constitutional protections while incarcerated. "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley,* 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). However, "[r]ecognition of some measure of constitutional protection, however, 'in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which [prisoners] have been lawfully committed.'" *United States v. Stotts,* 925 F.2d 83, 86 (4th Cir.1991) (quoting *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). Because maintaining prison safety and internal security are primary functions of prison administration, withdrawal or limitation of many privileges and rights may be justified. *Stotts,* 925 F.2d at 86 (citations omitted).

In a non-prison context, the opening, inspection and censorship of incoming correspondence would be objectionable under the First Amendment. However, it is well established that "a prison rule that impinges on an inmate's constitutional rights is valid 'if it is reasonably related to legitimate penological interests.'" *Altizer v. Deeds,* 191 F.3d at 547 (quoting *Turner,* 482 U.S. at 89, 107 S.Ct. 2254). Thus, with respect to DOP 851's provision applicable to incoming general correspondence, our analysis is governed by *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

*Turner* established a four-part test to determine the reasonableness of a prison

regulation. First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest used to justify the regulation. *Turner*, 482 U.S. at 89, 107 S.Ct. 2254. Moreover, the governmental objective must be legitimate and neutral, without regard to the content of expression. *Id.* at 90, 107 S.Ct. 2254. Second, we must determine whether there are alternative means of exercising the right that are available to inmates. *Id.* Third, we must consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and the allocation of prison resources generally." *Id.* "When accommodation of an asserted right will have a significant ripple effect on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Id.* (internal quotations omitted). Fourth, "the absence of ready alternatives [2] is evidence of the reasonableness of a prison regulation." *Id.*

Therefore, these four factors will be utilized to determine the reasonableness of DOP 851.4(A), the provision regarding incoming general correspondence. Defendants contend that DOP 851 is a neutral regulation which is reasonably related to the legitimate governmental interest of prison safety and security. Judgments regarding prison security "are peculiarly within the province and professional expertise of corrections officials, and in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."

*Pell v. Procunier*, 417 U.S. 817, 827, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Moreover, defendants submit that the regulation was instituted to suppress contraband and maintain discipline, health, safety and security. In addition, defendants argue that incoming mail is recognized as a source for contraband to enter the institutions. (Pixley Aff. ¶ 7.) Therefore, all incoming correspondence and packages must be opened and thoroughly searched prior to delivery. *Id.* In addition, correspondence may contain information that is a threat to institutional security, such as escape plans. *Id.* Thus, there exists a rational connection between DOP 851 and the legitimate governmental interest justifying it.

Second, prisoners have an alternative means of exercising their First Amendment right to receive personal correspondence. Prisoners are not forced, as plaintiff contends, to sign the Notice to All Inmates—General Correspondence, an acknowledgment of the conditions governing general correspondence. Rather, they are given the choice to consent to have their incoming general correspondence delivered subject to correspondence being opened and read, or returned to the United States Postal Service.[3] Therefore, plaintiff is able to receive general correspondence, subject to reasonable security and safety precautions.

Third, if prisoners were permitted to have unfettered access to their general correspondence, it would "threaten the core functions of prison administration, maintaining safety and internal security." *Turner*, 482 U.S. at 92, 107 S.Ct. 2254.

---

**2.** "This is not a 'least restrictive alternative' test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Turner*, 482 U.S. at 90–91, 107 S.Ct. 2254.

**3.** Regardless of their choice, legal mail is delivered to all prisoners, after it is opened in the presence of the inmate and checked for contraband.

Escape plans, contraband, illegal activity could be conducted without any warning, leaving inmates and prison personnel vulnerable to attack. Accordingly, plaintiff's First Amendment right "can be exercised only at the cost of significantly less liberty and safety for everyone else, guards and other prisoners alike." *Turner*, 482 U.S. at 92, 107 S.Ct. 2254. Thus, the potential "ripple effect" that unchecked incoming mail would present outweighs the priority of a prisoner's First Amendment right.

Lastly, there are no feasible ready alternatives that can be instituted in the place of DOP 851 with regard to incoming correspondence. Plaintiff has not provided any alternative suggestions which would impose no more than a de minimis cost on the pursuit of legitimate corrections goals. *Turner*, 482 U.S. at 92, 107 S.Ct. 2254. In conclusion, DOP 851.4(A) regarding incoming correspondence is content neutral, was created to ensure prison security and safety, and is not an exaggerated response to such objectives. Thus, because it is reasonably related to a legitimate penological interest, the regulation as it relates to incoming correspondence does not violate plaintiff's constitutional rights.

■ Similarly, plaintiff's objection to the limitation of the size and weight of incoming and outgoing correspondence fails because the provision is justified by a legitimate governmental interest. Defendants assert that mail is limited in size for security purposes, and to expedite mail processing time in order to insure timely delivery of all mail to prisoners. The limitation of inmate mail to one envelope and one ounce, or five photographs, further institutional safety. (Pixley Aff. ¶ 7.) Because DOP 851 permits general correspondence to be read, in order for staff to be able to review correspondence for such content, it is necessary to limit the amount received in a single mailing. *Id.* More-

over, prisoners are not prevented from sending or receiving general correspondence. Rather, they are given parameters within which correspondence may be managed effectively for the safety of other inmates and the institution as a whole. Without such limitations on size and weight, the prison would be inundated with voluminous mail to be sent and received, significantly increasing the amount of manpower and time required to properly screen and process the mail. Thus, the impact on prison staff and other inmates, who would experience delays in their mail, and the strain on prison resources would not justify eliminating size and weight restrictions on general correspondence. Finally, plaintiff has again failed to provide any ready alternatives to the size and weight restriction which would facilitate the needs of prison security while accommodating his desire to enjoy limitless volumes of mail. Accordingly, it is determined that DOP 851.4(A)(4) is reasonably related to a legitimate penological interest, and plaintiff's claim must be dismissed.

■ Now, with respect to outgoing general correspondence. DOP 851.4(B) permits outgoing general correspondence to be opened, examined and censored if there is reasonable suspicion of illegal activity. The Fourth Circuit has held that the opening and inspection of prisoners' outgoing mail is reasonably related to legitimate penological interests, and it is therefore constitutional. *Altizer v. Deeds,* 191 F.3d 540, 548 (4th Cir.1999). Thus, the remaining issue for analysis is the constitutionality of the provision permitting censorship of outgoing correspondence.

Regulation of incoming correspondence is governed by the *Turner* analysis because "the impact of the correspondence on the internal environment of the prison was of great concern." *Thornburgh v.*

*Abbott,* 490 U.S. 401, 413, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). However, because "implications of outgoing correspondence are of a categorically lesser magnitude than the implications of incoming materials," the stricter standard set forth in *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), is applied as to censorship of outgoing materials. The *Martinez* standard was limited to "regulations concerning the censorship of outgoing personal correspondence from prisoners." *Altizer,* 191 F.3d at 548. The Supreme Court held in *Martinez* that personal correspondence including material which contain contraband, or used to conduct illegal activity, plots to escape, can be censored. *Martinez,* 416 U.S: at 414, 94 S.Ct. 1800.

■■■ Therefore, censorship of outgoing correspondence is justified if the regulation furthers an important or substantial government interest unrelated to the suppression of expression, and the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interests of security, order and rehabilitation, i.e., it must be narrowly drawn. *Procunier v. Martinez,* 416 U.S. 396, 413–14, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974).

First, it is evident that DOP 851.4(B) furthers an important governmental interest. Censorship of personal correspondence that include threats, blackmail, contraband, plots to escape, discusses criminal activities, or otherwise circumvents prison regulations, is essential to the protection of substantial governmental interests. *Altizer,* 191 F.3d at 548. These are the very same reasons defendants provide for the need to censor outgoing correspondence.

Moreover, this portion of DOP 851 has been narrowly drawn. It provides that prison officials *may* open, examine and censor any outgoing mail, upon reasonable suspicion of illegal activity, unlike the language regarding incoming correspondence ("all incoming general correspondence *will* be opened, searched, and may be read"). Thus, as required by *Martinez,* the outgoing correspondence provision affords more protection to inmates. In addition, reasonable suspicion of illegal activity must be present before authorized officials may proceed to open, inspect, and censor the outgoing correspondence, thus providing an objective standard to screen outgoing mail. Therefore, it is not a certainty that every piece of outgoing correspondence will be censored, nor are prison officials given unchecked, subjective censorship control. Therefore, this portion of DOP 851 is narrowly drawn to reach only material that might pose a security risk to the inmates, officials, and the institution. *Martinez,* 416 U.S. at 416, 94 S.Ct. 1800. Accordingly, DOP 851(B)(1) is not unconstitutional on its face. Thus, as a matter of law, plaintiff fails to state a claim with regard to censorship of outgoing correspondence, and it must therefore by dismissed.

*Claim 16*

■■■ Defendant contends that plaintiff was never cited for a violation of DOP 861.6–5, however, plaintiff now disputes the constitutionality of the regulation. Plaintiff has no standing to challenge this regulation. To demonstrate standing, plaintiff must allege an actual or threatened injury that is fairly traceable to defendants' allegedly unlawful conduct and likely to be redressed by requested relief. *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); *Valley Forge Christian College v. Americans United for Separation of Church & State,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *Kemler v. Poston,* 108 F.Supp.2d 529 (E.D.Va.2000). Therefore,

a plaintiff must clearly set forth facts to satisfy the standing requirement in order to qualify for judicial review. *Kemler,* 108 F.Supp.2d at 534. However, as plaintiff has failed to establish an actual injury in his claim, this action must be dismissed for lack of standing.

Constitutional rights "do not exist in a vacuum." *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252. 254 (1978). Therefore, "the abstract value of a constitutional right may not form the basis for § 1983 damages ... in the absence of proof of 'actual injury.'" *Bernadou v. Purnell,* 836 F.Supp. 319, 326 (D.Md.1993). Because plaintiff was not personally affected in any way by the regulation, he has no standing to bring this claim. Therefore, it must be dismissed.

Accordingly, for the reasons listed above, there does not appear to be a genuine issue of material fact in dispute. Therefore, based on this record, defendants' Motion for Summary Judgment must be granted.

An appropriate Order shall issue.

### JUDGMENT

Pursuant to the order of this Court entered on September 4, 2002 and in accordance with Federal Rules of Civil Procedure 58, JUDGMENT is hereby entered in favor of defendants, Warden Powell, Asst. Warden Pixley, Asst. Warden Allen, S. Beale, Sgt. Sykes, Sgt. Bynum, Officer Danials, Sgt. Hedgepeth, Officer Grizzard, Lt. Parker, Sgt. Green, Hearing Officer Seal, Director Fleming, G. Johnson, and J. Gilmore, against the plaintiff Dan Oliver.

### ORDER

For the reasons stated in the attached Memorandum Opinion, it is hereby

**ORDERED** that defendants' Motion for Summary Judgment (Docket No. 21–1) is **GRANTED** and plaintiff's Motion for Summary Judgment (Docket No. 30–1) is **DENIED** as moot; and it is further

**ORDERED** that defendants' Motion for Revocation of In Forma Pauperis Status (Docket No. 21–2), plaintiff's Motion for Default Judgment (Docket No. 23), Motion to Deny Revocation of In Forma Pauperis Status (Docket No. 30–2), Motion for Appointment of Counsel (Docket No. 30–3), and Motion for Judgement (Docket No. 33) are **DENIED** as moot;

The Clerk is DIRECTED to enter JUDGMENT pursuant to Fed.R.Civ.P. 58 in defendants' favor and to send a copy of this Order to plaintiff, *pro se,* and to counsel of record for the defendants.

Should plaintiff wish to appeal, he must file a notice of appeal within thirty (30) days of the date of this Order with the Clerk of this Court. Thereafter, all correspondence and motions should be directed to the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit.